IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

www.laed.uscourts.gov

| | |
|---|---|
| COMMUNITY ASSOCIATES, INC. | Civil Action No. 2:25-cv-1181 |
| *Plaintiff,* | Judge Anna St. John |
| V. | |
| KELLY LOEFFLER, Administrator of the U.S. Small Business Administration, in her official capacity, and SCOTT BESSENT, Secretary of the U.S. Department of the Treasury, in his official capacity. | Chief Magistrate Judge Janis van Meerveld |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF CAI'S OPPOSITION THE SBA'S MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Community Associates, Inc. ("CAI"), who respectfully submits this Memorandum in Opposition to the Motion for Summary Judgment filed by Defendant, the United States Small Business Administration and in support thereof respectfully states as follows:

**I. Introduction**

Congress enacted the Paycheck Protection Program (PPP) during a national emergency to move economic relief quickly into the hands of struggling American businesses. It chose speed over bureaucracy. Rather than requiring direct SBA underwriting of every loan, Congress adopted a lender-driven system built upon streamlined approvals, lender certifications, and SBA guaranties.

Businesses were instructed to apply through participating lenders and proceed under the rules Congress established.

CAI did exactly that.

CAI applied for a PPP loan through an authorized lender. The lender reviewed the application, certified eligibility, approved the loan, and disbursed the funds under the SBA's guaranty structure. The SBA approved the loan through its own emergency-relief framework and allowed the loan to exist for years as an authorized PPP obligation. Only later did the agency reverse course and retroactively declare CAI ineligible.

But the SBA's determination rests almost entirely on a single accounting calculation drawn from CAI's tax returns. Because certain income reflected mortgage and loan interest associated with seller-financed real-estate transactions, the agency concluded that CAI was "primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b). The administrative record reflects no meaningful analysis of CAI's actual operations, no examination of whether CAI functioned as a bank or commercial lender, and no serious effort to connect the regulation's text to the realities of CAI's business.

The APA requires more. Agencies must engage in reasoned decision-making grounded in the administrative record and consistent with the governing regulation itself. Courts, in turn, must exercise independent judgment in determining whether agency action comports with law. Here, the administrative record reflects conclusory reasoning, failure to conduct the operational inquiry required by 13 C.F.R. § 120.110(b), disregard of substantial reliance interests created by the government's own approval process, and serious notice deficiencies surrounding the SBA's

purported final action. For those reasons, the SBA's determination cannot withstand review under the APA.

## FACTS

### II. Statement of Facts

Congress enacted the PPP during the height of the COVID-19 economic crisis to move emergency relief quickly into the hands of American businesses struggling to survive unprecedented disruptions to commerce and payroll. The program depended upon speed, lender participation, and streamlined review procedures. Rather than requiring direct SBA underwriting of each application, Congress structured the PPP around participating private lenders operating under SBA guaranties and expedited approval mechanisms designed to stabilize the economy before further damage could occur.

CAI participated in that process exactly as the government instructed.

In 2020, CAI applied for a PPP loan through Hancock Whitney Bank, an authorized participating lender under the CARES Act. As part of the application process, Hancock Whitney reviewed CAI's submission, evaluated eligibility under applicable PPP guidance, certified the loan, and approved funding under the SBA's guaranty structure. The SBA, in turn, guaranteed the loan pursuant to the framework established under the CARES Act and related PPP regulations. CAI thereafter received approximately $27,775.00 in PPP funds.

At no point during the loan approval process did the SBA identify CAI as an ineligible borrower. Nor did the agency contend that CAI functioned as a prohibited "financial business primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b). To the contrary, the

-3-

loan proceeded through the exact lender-driven approval framework Congress created to rapidly distribute emergency relief during the COVID-19 crisis.

CAI reasonably relied upon those approvals and the government's administration of the PPP program itself. The loan existed for years within the government's own system as an approved PPP obligation. During that time, CAI was never accused of fraud, concealment, falsification of records, or deceptive conduct in connection with the application process. The information later relied upon by the SBA—including CAI's tax information and income reporting—was not hidden from the government.

In 2022, CAI submitted a request for PPP loan forgiveness pursuant to the procedures established by the SBA and the CARES Act. During the forgiveness-review process, the SBA requested additional documentation, including tax returns and related financial records.

Only afterward did the SBA reverse course and retroactively declare CAI ineligible for the PPP loan. The agency based that determination primarily upon a single calculation drawn from CAI's tax returns reflecting that approximately fifty-five percent of certain reported income in 2019 derived from mortgage and loan interest associated with real-estate transactions financed by CAI. From that figure alone, the SBA concluded that CAI was "primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b).

The SBA's determination, however, contained no meaningful analysis of CAI's actual business operations. The agency did not examine whether CAI functioned as a bank, finance company, factoring business, or commercial lending institution within the ordinary meaning of the regulation. It did not analyze the operational nature of CAI's business activities, employee functions, organizational purpose, or the role of seller-financed real-estate transactions within

CAI's broader commercial operations. Instead, the agency reduced the inquiry to a mechanical percentage calculation derived from a single category of reported income.

Following the ineligibility determination, CAI sought further administrative review within the SBA process. However, the SBA later asserted that portions of CAI's administrative appeal efforts were untimely. Despite that position, CAI pursued further review through the SBA Administrator.

Critically, CAI was never provided notice of the SBA Administrator's purported final action through mail, email, or any other verifiable method of service. The first time CAI became aware of the Administrator's action was after the government later produced an undated copy of the document during these judicial proceedings. See Ex. A, Nancy Philburn Aff. ¶¶ 7–10. The administrative record contains no meaningful proof that the decision was ever transmitted to CAI through any method reasonably calculated to provide actual notice.

Meanwhile, despite retroactively declaring CAI ineligible for the loan, the SBA paid Hancock Whitney under the federal guaranty structure governing PPP loans and later sought to pursue collection efforts against CAI. Thus, after approving the loan through the government-created emergency lending framework, guaranteeing the loan, and allowing the loan to exist for years as an approved PPP obligation, the SBA reversed course and attempted to transform the same loan into a collectible federal debt.

CAI now seeks judicial review under the Administrative Procedure Act because the SBA's determination was arbitrary, capricious, contrary to law, and unsupported by the reasoned administrative analysis required under the APA and 13 C.F.R. § 120.110(b).

## LAW AND ARGUMENT

### III. Standard of Review

This action arises under the Administrative Procedure Act ("APA"). Under the APA, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Although judicial review under the APA is deferential, it is not a rubber stamp. An agency must engage in reasoned decision-making and articulate a rational connection between the facts found and the conclusions reached. Agency action is arbitrary and capricious where the agency:

- relied upon improper considerations;
- failed to consider important aspects of the problem before it;
- offered explanations contrary to the record;
- or adopted conclusions unsupported by reasoned analysis.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43-45 (1983).

Those principles carry particular force following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*. *Loper Bright Enterprises v Raimondo*, 603 US 369 (2024). There, the Supreme Court reaffirmed that courts must exercise independent judgment in determining questions of law arising under the APA and rejected reflexive judicial deference to agency interpretations merely because an agency asserts regulatory authority over a subject matter. *Loper*, at 391-397. While agency expertise may inform judicial review, it does not displace the judiciary's obligation to determine whether the agency's interpretation is consistent with the

governing regulation and supported by reasoned decision-making grounded in the administrative record itself.

The Fifth Circuit recently reaffirmed these same principles in *Texas v. United States EPA*, 170 F.4th 328 (5th Cir. 2026). There, the court emphasized that agencies must provide genuine analytical support for their conclusions and may not rely upon conclusory assertions, unsupported assumptions, or post hoc rationalizations untethered from the administrative record. The Fifth Circuit further emphasized that courts reviewing agency action under the APA must carefully examine whether the agency actually considered the relevant factors before it and adequately explained the basis for its determination.

The APA also requires agencies to account for serious reliance interests created by their own prior conduct before reversing course in a manner that disrupts settled expectations. That principle carries particular significance in the context of the PPP, which Congress enacted during a national emergency through a rapid lender-driven approval framework designed to move relief quickly into the hands of participating businesses operating under extraordinary economic conditions.

Accordingly, the issue before this Court is not whether the SBA can now construct a litigation position supporting its determination. The issue is whether the administrative record demonstrates that the agency actually engaged in reasoned decision-making and adequately explained why CAI qualified as a business "primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b). Where the record reflects conclusory reasoning, failure to consider important aspects of the problem, disregard of substantial reliance interests, or an interpretation inconsistent with the governing regulation itself, the agency's determination cannot withstand review under the APA.

-8-

**A. The SBA Arbitrarily Equated Interest Income with Being "Primarily Engaged in the Business of Lending."**

The SBA's determination rests on a single premise: because approximately fifty-five percent of CAI's reported income in 2019 derived from mortgage and loan interest, CAI was therefore "primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b).[1] That conclusion does not follow from the regulation, the administrative record, or ordinary commercial reality.

The regulation excludes "[f]inancial businesses primarily engaged in the business of lending." 13 C.F.R. § 120.110(b). The words chosen by the regulation matter. The exclusion does not apply to every company that receives interest income. Nor does it apply to every business that finances transactions incidental to its operations. Instead, the regulation targets "financial businesses" whose primary business activity is lending itself. The SBA's determination effectively rewrites the regulation into a materially different rule—one that disqualifies any company earning more than fifty percent of its income from interest-related revenue. But that is not the regulation the SBA promulgated.

The Supreme Court recently reaffirmed that courts must exercise independent judgment in determining whether an agency's interpretation is consistent with the governing law and may not

---

[1] The SBA's actual "Decision Narrative" reflects the conclusory nature of the agency's analysis:

"After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. After extensive review of the documents and information provided, it has been determined that the borrower is primarily involved in the sale and financing of real estate. The borrower recognized the majority of its income in 2019 from interest charged (55%) on real estate sales that they had financed. As such, the borrower is primarily involved in lending and is therefore ineligible for PPP loan forgiveness."

Notably absent from the agency's narrative is any meaningful discussion of CAI's actual operational structure, business purpose, employee functions, or whether any financing activity was merely incidental to broader real-estate operations. See CAI Ex. B.

reflexively defer to administrative interpretations untethered from the text itself. *Loper*, at 391-397. Here, the SBA's interpretation effectively rewrites the language of 13 C.F.R. § 120.110(b) by collapsing the regulation's operational inquiry into a simplistic accounting formula based solely upon a single category of revenue.

The administrative record demonstrates that the SBA performed no meaningful analysis of CAI's actual business operations before assigning it the label of a prohibited lending business. The agency did not analyze CAI's organizational purpose, the nature of its operations, the activities of its employees, the character of its real-estate transactions, whether it held itself out to the public as a lender, whether it operated as a commercial finance company, or whether any financing activity was merely incidental to its underlying business model. Instead, the SBA relied almost exclusively on a mathematical ratio derived from a single tax year.

That is not reasoned decision-making. It is a shortcut.

The Supreme Court has long required agencies to articulate a rational connection between the facts found and the conclusions reached. *Burlington Truck Lines, Inc*. v. *United States*, 371 U.S. 156, 168 (1962).  Likewise, agency action is arbitrary and capricious where the agency fails to consider important aspects of the problem before it or adopts conclusions unsupported by reasoned analysis. *State Farm*, 463 U.S. at 43-45 (1983).

The record reflects that the interest income identified by the SBA arose from real-estate sales financed by CAI itself. But seller financing is not synonymous with operating a lending business. A company engaged in the ownership, sale, or development of real estate may finance transactions connected to the disposition of its own property without thereby becoming a "financial business primarily engaged in the business of lending." If that were the rule, countless businesses

engaged in installment sales, owner financing, or structured commercial transactions would suddenly fall within a regulatory exclusion plainly intended for banks, finance companies, factoring entities, and commercial lenders.

The SBA's analysis ignores this distinction entirely.

Indeed, the SBA's position improperly elevates one category of revenue over every other indicator of actual business activity. Under the agency's approach, a temporary spike in interest income—even one arising from the timing of real-estate transactions—would automatically transform a business into an ineligible financial institution. Nothing in 13 C.F.R. § 120.110(b) supports such an inflexible interpretation. The regulation requires an inquiry into what the business primarily is and primarily does, not merely what category of income appeared on a tax return during a particular reporting period.

Equally important, the SBA failed to explain why CAI should properly be classified as a "financial business" at all. The agency simply assumed the conclusion it was required to prove. The administrative determination contains no meaningful discussion of the commercial realities of CAI's operations and no analysis connecting the cited tax figures to the regulatory language actually at issue.

The Fifth Circuit has repeatedly rejected precisely this kind of conclusory agency reasoning. Agency action cannot survive APA review where the administrative process reflects unsupported assumptions, insufficient reasoning, or a failure to adequately analyze the relevant facts contained within the administrative record. *Texas v. United States EPA*, 170 F.4th 328 (5th Cir. 2026); *Texas Oil & Gas Association v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998). The Fifth Circuit has likewise emphasized that courts must determine whether the agency actually

considered the relevant factors before it and articulated a rational relationship between the record and the conclusion reached. See *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322 (5th Cir. 1988).

The absence of reasoned analysis is *particularly* significant here because the PPP was implemented during an unprecedented national emergency through a rapid lender-driven approval process in which businesses reasonably relied upon ordinary commercial understandings of eligibility.

The Court's role under the APA is not to defer to conclusory administrative labels that lack meaningful analysis or evidentiary support. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-15 (1971). Nor may the government cure analytical deficiencies through post hoc litigation rationalizations untethered from the agency's contemporaneous reasoning reflected in the administrative record itself. *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

Here, the SBA identified interest income and then leapt directly to the conclusion that CAI was "primarily engaged in the business of lending," without undertaking the operational analysis the regulation itself requires.

That leap renders the agency's determination arbitrary, unsupported, and contrary to the text of its own regulation.

**B. Congress Broadly Expanded PPP Eligibility During the COVID-19 Emergency, and the SBA Failed to Account for the Reliance Interests Created by That Emergency Framework.**

The SBA's determination also fails because the agency ignored both the broader statutory framework Congress created for the PPP and the substantial reliance interests arising from the government's own approval and administration of CAI's loan. That omission independently renders the agency's action arbitrary and capricious.

The PPP was not an ordinary commercial lending program implemented under ordinary conditions. It was emergency legislation enacted during an unprecedented national crisis. Congress designed the program to move rapidly, stabilize payrolls, and distribute relief through participating private lenders operating under compressed timelines and evolving guidance. To accomplish that purpose, Congress broadly extended eligibility to "any business concern" meeting the applicable size requirements under the CARES Act framework.

At the time CAI applied for and obtained its PPP loan on May 1, 2020, Congress had materially broadened PPP eligibility beyond many of the ordinary restrictions associated with traditional SBA Section 7(a) lending. Multiple courts recognized that Congress intended the PPP to operate under a broader emergency-relief framework than the SBA's traditional lending regulations. As the Sixth Circuit explained, when Congress enacted the CARES Act and extended eligibility to "any business concern," Congress made clear that many of the SBA's longstanding ineligibility rules applicable to ordinary Section 7(a) lending were incompatible with the emergency structure Congress created during the COVID-19 pandemic. *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020). Other courts likewise recognized that Congress materially expanded PPP eligibility during the unprecedented circumstances surrounding the COVID-19 emergency. *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 555 F. Supp. 3d 598 (E.D. Wis. 2021), rev'd on other grounds, 24 F.4th 640 (7th Cir. 2022); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 555 F. Supp. 3d 598 (E.D. Wis. 2021), rev'd on other grounds, 24 F.4th 640 (7th Cir. 2022).

Against that backdrop, CAI applied for its PPP loan as an eligible business concern under the CARES Act framework then in effect. CAI submitted its application through Hancock Whitney Bank. Both CAI and Hancock certified eligibility under the governing program rules. The loan

was approved. The loan was funded. The SBA guaranteed the loan. For years thereafter, the loan existed within the government's own framework as an approved PPP obligation. Only later—after the passage of substantial time and after CAI had already relied upon the government's approval and the structure of the PPP itself—did the SBA retroactively determine that CAI should never have received the loan in the first place.

The agency's determination contains no meaningful discussion whatsoever of those reliance interests.

That omission matters. An agency cannot simply reverse course in a manner that disrupts settled expectations while ignoring the real-world consequences created by its own prior actions. The APA requires reasoned decision-making. It requires the agency to examine the relevant considerations before imposing a retroactive determination carrying significant financial consequences.

The Supreme Court has made clear that agencies must account for serious reliance interests before reversing course and disrupting settled expectations created by prior government action. *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 30-33 (2020). Likewise, where agencies change positions in ways that unsettle reliance interests, they must provide a reasoned explanation for doing so. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here, however, the SBA treated the matter as though CAI existed in a vacuum entirely separate from the government-created emergency lending structure through which the loan was approved, guaranteed, funded, and administered.

The administrative record reflects that the SBA now relies heavily upon information contained in CAI's tax returns. But those records were not hidden from the government, nor is this a case involving allegations of fraud, falsified documentation, concealment, or deceptive conduct by the borrower. The information the SBA now cites as grounds for disqualification existed from the beginning of the process. Yet the loan proceeded through the lender review process, obtained SBA backing, and remained in good standing for a substantial period of time before the agency abruptly reversed position.

The SBA's motion attempts to reduce this case to a simple exercise in regulatory enforcement. It is not. At bottom, the government seeks to retroactively convert an approved emergency-relief loan into a collectible federal debt years after inducing reliance through the very structure Congress created to expedite relief during the COVID-19 crisis. The agency's decision contains no meaningful consideration of the reliance interests created by that framework, no explanation for the delay in reversing course, and no discussion of the prejudice imposed upon CAI by the government's own shifting position.

That failure is especially significant under the APA because the Court's review is not limited to whether the agency identified some factual basis for its conclusion. The Court must also determine whether the agency engaged in reasoned decision-making and adequately considered the important aspects of the problem before it. *State Farm*, 463 U.S. at 43-45. An agency action is not insulated from review merely because the agency can point to some evidence in the record while disregarding other critical considerations created by its own conduct. *Overton Park*, 401 U.S. at 413-416.

The Fifth Circuit has similarly emphasized that agency action becomes arbitrary where the agency disregards material aspects of the record or fails to adequately explain the basis for

-14-

disrupting settled expectations created by prior administrative conduct. *Texas v. United States EPA*, 170 F.4th 328 (5th Cir. 2026); See *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322 (5th Cir. 1988).

Here, the SBA entirely failed to grapple with the central reality underlying this dispute: CAI reasonably relied upon a government-approved emergency lending program administered through lender certifications and SBA guaranties during one of the most economically disruptive periods in modern history. See Ex. A, Nancy Philburn Aff. ¶¶ 2–4. The agency's complete failure to address those reliance interests, coupled with its retroactive application of a narrower eligibility framework inconsistent with the emergency structure Congress enacted during the pandemic, renders the SBA's determination arbitrary, incomplete, and contrary to the principles of reasoned administrative decision-making required under the APA.

**C. The SBA Failed to Engage in Reasoned Decision-Making and Issued a Conclusory Administrative Determination Unsupported by Meaningful Analysis.**

The SBA's determination cannot withstand APA review for an additional and independent reason: the agency failed to engage in reasoned decision-making before declaring CAI ineligible for the PPP. Rather than conducting a meaningful analysis of CAI's actual business operations and the applicability of 13 C.F.R. § 120.110(b), the agency issued a conclusory determination resting almost entirely upon a single numerical calculation derived from CAI's tax returns.

That is not the careful administrative analysis the APA requires.

The administrative record demonstrates that the SBA identified one fact—that approximately fifty-five percent of CAI's reported income for 2019 consisted of mortgage and loan interest—and from that fact alone concluded that CAI was "primarily engaged in lending." The agency's determination contains little, if any, meaningful explanation connecting that isolated percentage calculation to the actual language of the governing regulation. Nor does the record

-15-

reflect any serious effort to evaluate the real-world nature of CAI's business operations before assigning CAI the label of an ineligible financial institution.

The problem is not merely that the SBA reached the wrong conclusion. The problem is that the agency failed to adequately explain how it reached the conclusion at all.

The regulation at issue excludes "[f]inancial businesses primarily engaged in the business of lending." 13 C.F.R. § 120.110(b). Yet the SBA's determination never meaningfully analyzes whether CAI operated as a "financial business" within the ordinary meaning of that term. The agency did not examine whether CAI functioned like a bank, finance company, factoring entity, or commercial lender. It did not evaluate whether CAI extended financing to the public as an independent line of business. It did not analyze whether the cited interest income arose merely from seller-financed real-estate transactions incidental to CAI's broader operations. It did not examine the nature of CAI's employees, organizational structure, operational purpose, or commercial activities. Instead, the agency appears to have assumed that because interest income existed, the business itself must necessarily have been a lending institution.

That analytical gap is fatal.

An administrative agency must do more than announce a conclusion and cite a number from a tax return. The APA requires the agency to articulate a rational connection between the facts found and the conclusion reached. Here, however, the SBA's determination effectively collapses the entire regulatory inquiry into a simplistic accounting formula divorced from the actual language of the regulation and the practical realities of the business involved.

Equally significant is the SBA's failure to address obvious distinctions raised by the record itself. Seller financing associated with real-estate transactions is not automatically synonymous

with operating a lending business. Many commercial enterprises receive interest income ancillary to their principal operations. Yet the SBA's determination contains no discussion whatsoever explaining why CAI's activities should properly be treated as the equivalent of a prohibited financial institution under § 120.110(b). The agency simply announced the conclusion without meaningfully analyzing the underlying question.

The conclusory nature of the determination is particularly troubling given the context in which this dispute arose. The PPP was implemented during a national emergency through an expedited lending framework involving lender certifications, evolving guidance, compressed timelines, and substantial reliance by participating borrowers. In that setting, the government's decision to retroactively disqualify a borrower years after approval demanded careful reasoning and a thorough explanation grounded in the actual regulatory language. Instead, the administrative record reflects a cursory analysis centered almost entirely upon a percentage calculation untethered from the broader operational inquiry the regulation necessarily requires.

The Court's review under the APA is deferential, but it is not meaningless. Deference does not permit an agency to substitute labels for analysis or assumptions for reasoning. The SBA was required to explain why CAI actually fit within the category of businesses excluded by 13 C.F.R. § 120.110(b). The administrative record demonstrates that the agency failed to do so.

Accordingly, the SBA's determination was conclusory, insufficiently reasoned, and arbitrary under the APA.

## D. The Administrative Record Demonstrates the SBA Failed to Conduct the Analysis Required by 13 C.F.R. § 120.110(b).

The administrative record confirms that the SBA's determination was not the product of a meaningful operational analysis of CAI's business activities, but instead the result of a narrow and

mechanical review focused almost exclusively upon a single line item contained within CAI's tax returns. From the fact that approximately fifty-five percent of CAI's reported income in 2019 derived from mortgage and loan interest, the SBA concluded that CAI was "primarily engaged in lending." But the record reflects little effort to examine the actual nature of CAI's business before assigning that label.

The SBA did not meaningfully analyze CAI's operational structure, the character of its business activities, the context of the real-estate transactions at issue, or whether any financing activity was merely incidental to a broader commercial enterprise. Nor did the agency examine whether CAI functioned like a bank, finance company, or commercial lender ordinarily associated with businesses "primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b). Instead, the agency effectively replaced the functional inquiry required by the regulation with a single accounting calculation.

That is insufficient under the APA. An agency must articulate a rational connection between the facts found and the conclusion reached. *Burlington Truck Lines*, 371 U.S at 168. Agency action becomes arbitrary and capricious where the agency fails to consider important aspects of the problem before it or relies upon conclusory reasoning unsupported by the administrative record. *State Farm*, 463 U.S. at 43-45.

The Supreme Court has likewise reaffirmed that courts reviewing agency action under the APA must exercise independent judgment and may not reflexively defer to unsupported administrative interpretations untethered from the governing regulation itself. *Loper*, at 391-397. Here, the SBA effectively rewrote 13 C.F.R. § 120.110(b) into a rule disqualifying any business generating substantial interest income, regardless of the actual nature of its operations.

The administrative record also fails to demonstrate that the SBA considered whether the cited interest income arose from seller-financed real-estate transactions connected to CAI's ownership and disposition of property. That distinction matters. Businesses engaged in real-estate ownership, development, or sales may structure transactions involving installment payments or owner financing without thereby becoming prohibited financial institutions. Yet the SBA offered no meaningful explanation as to why CAI's activities crossed that line.

Equally important, the Court's review is confined to the rationale actually reflected in the administrative record itself. The government cannot cure analytical gaps through post hoc arguments advanced during litigation. *Chenery Corp.*, 318 U.S. at 88. *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). The relevant question is not whether the SBA can now construct a more detailed explanation during summary judgment briefing, but whether the agency actually engaged in reasoned decision-making at the time it rendered the determination.

The Fifth Circuit has repeatedly rejected agency action resting upon unsupported assumptions and insufficient analysis. *Texas v. United States EPA*, 170 F.4th 328 (5th Cir. 2026); *Texas Oil & Gas Association*, 161 F.3d at 933. Here, the record demonstrates that the SBA identified interest income, applied a percentage calculation, and from that figure alone concluded that CAI was an ineligible lending business. The administrative record contains no meaningful operational analysis supporting that leap.

Accordingly, the administrative record itself confirms that the SBA's determination was incomplete, insufficiently reasoned, and arbitrary under the APA.

**E. CAI Was Never Properly Provided Notice of the Administrator's Action, Further Undermining the Fairness and Finality of the SBA's Determination.**

The procedural history of this matter presents an additional and deeply troubling defect in the SBA's administrative process: CAI was never provided a copy of the SBA Administrator's purported final action by mail, email, or any other identifiable means reasonably calculated to provide actual notice. Instead, the first time CAI became aware of the document was after the government later submitted an undated copy into the record before this Court. The document itself contains no date of issuance, no certificate of service, no indication of mailing or electronic transmission, and no proof that it was ever sent to or received by CAI. See SBA000096, Rec. Doc. 18-3, at 93; see also CAI Ex. C.[2]

That fact matters.

The SBA now attempts to invoke procedural finality and administrative default as though CAI knowingly ignored a properly served agency determination and simply failed to act. But the administrative record reflects something very different. CAI pursued review of the agency's ineligibility determination and sought further relief through the Administrator. Yet the government cannot demonstrate that CAI was ever actually provided the Administrator's decision in any verifiable manner before litigation commenced. From CAI's perspective, the process simply disappeared into an administrative void.

---

[2] The purported Administrator letter appears at SBA000096 in the administrative record. See Rec. Doc. 18-3, at 93; see also CAI Ex. C. The document is addressed to the wrong name, contains no transmission date, no mailing notation, no email metadata, no certificate of service, and no indication that it was ever transmitted to CAI through any identifiable method reasonably calculated to provide actual notice.

The Supreme Court has long recognized that due process requires notice "reasonably calculated, under all the circumstances," to apprise affected parties of governmental action carrying legal consequences. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Administrative deadlines and procedural bars cannot fairly arise from decisions never meaningfully communicated to the affected party in the first place. Here, there is no indication in the record that the SBA transmitted the Administrator's action through certified mail, electronic delivery, formal notice procedures, or any documented method reasonably calculated to provide actual notice. There is no mailing record. No delivery confirmation. No email transmission. No acknowledgment of receipt. Instead, the government relies upon an undated administrative document that surfaced only after judicial proceedings were already underway.

The absence of notice is not a technicality. It strikes at the core of administrative fairness and procedural integrity. As the Supreme Court explained in *Jones v. Flowers*, where the government becomes aware that its efforts at notice are ineffective—or where the record fails to establish notice at all—due process requires more than silence and assumption. Administrative review procedures carry legal significance only when affected parties are actually informed of the decisions from which rights, obligations, and appellate deadlines arise. *Jones v. Flowers*, 547 U.S. 220 (2006)

Equally important, agencies must follow fair procedures of their own before invoking the harsh consequences of administrative default. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954), later mode of judicial review limited as noted in *LaGuerre v. Reno,* 164 F.3d 1035, 1038 (7th Cir. 1998) ("Until 1961, the mode of judicial review of deportation orders was by habeas corpus, or, after 1952, by declaratory judgment actions, in federal district courts."). The government cannot rely upon opaque or undocumented internal processes while simultaneously

insisting that the resulting determinations are insulated from judicial review through procedural finality doctrines. Nor may the SBA cure deficiencies in the administrative process through post hoc litigation arguments untethered from the contemporaneous record itself. Agency action must stand or fall upon the rationale and procedures reflected in the administrative record—not explanations later constructed during litigation. *Chenery Corp.*, 318 U.S. at 88.

The Supreme Court has likewise made clear that courts reviewing agency action under the APA must conduct a "searching and careful" review of the administrative process and may not simply rubber-stamp unsupported agency conclusions. *Overton Park*, 401 U.S. at 416. Here, the record contains no competent evidence demonstrating that CAI was ever meaningfully provided the Administrator's purported final action before the government later surfaced the document during this litigation.

That failure is particularly significant given the context in which the PPP operated. The program was administered during an unprecedented national emergency under rapidly evolving guidance, compressed timelines, and extraordinary administrative pressures. Against that backdrop, the SBA's inability to demonstrate that CAI actually received notice of the Administrator's determination substantially undermines the government's present attempt to invoke procedural default as a shield against judicial review.

Equally important, the absence of notice reinforces the arbitrary nature of the agency's conduct as a whole. The SBA approved the loan through its emergency-relief framework, later reversed course years afterward, denied forgiveness, pursued collection activity, and now seeks to rely upon procedural barriers tied to an administrative determination the borrower was never meaningfully provided. The cumulative effect is an administrative process lacking the transparency, clarity, and fairness required under the APA.

At minimum, the unresolved notice deficiencies reflected in the record preclude the government from characterizing CAI's administrative posture as a knowing or deliberate failure to pursue available remedies. More fundamentally, those deficiencies further demonstrate why the SBA's handling of this matter cannot be insulated from meaningful judicial review.

**CONCLUSION**

## IV. The SBA's Determination Cannot Withstand APA Review

Congress created the Paycheck Protection Program to move emergency relief quickly through a lender-driven system backed by SBA guaranties. CAI followed that system exactly as the government designed it. Its lender reviewed the application, certified eligibility, approved the loan, and disbursed the funds under the government's own emergency-relief framework. The SBA approved the loan, treated it for years as an authorized PPP obligation, and only later reversed course.

But administrative reversal is not administrative reasoning.

The SBA identified interest income reflected on CAI's tax returns and from that fact alone concluded that CAI was "primarily engaged in the business of lending" under 13 C.F.R. § 120.110(b). Yet the agency conducted no meaningful operational analysis, failed to grapple with the ordinary commercial realities of seller-financed real-estate transactions, disregarded substantial reliance interests created by the government's own approval process, and now attempts to defend its determination through litigation arguments absent from the contemporaneous administrative record itself.

The APA requires more than conclusions. It requires explanation. Agencies must connect the regulation to the facts, the facts to the conclusion, and the conclusion to the administrative

record. Courts, meanwhile, must exercise independent judgment rather than defer to unsupported assumptions or administrative shortcuts.

Here, the administrative record reflects a determination reached through arithmetic rather than analysis. The APA does not permit that shortcut.

For those reasons, CAI respectfully requests that this Court deny the SBA's Motion for Summary Judgment, grant CAI's Cross-Motion for Summary Judgment, hold unlawful and set aside the SBA's determination pursuant to 5 U.S.C. § 706(2)(A), and grant such other and further relief as justice requires.

DATED: May 21, 2026                                Respectfully Submitted,

                                                   /s/ Evan Park Howell III
                                                   Evan Park Howell III (18957)
                                                   Attorney at Law
                                                   1 Galleria Boulevard
                                                   Metairie, Louisiana 70001
                                                   Telephone:     (504) 343-4346
                                                   Facsimile:     (504) 613-6733
                                                   E-mail:        ehowell@ephlaw.com
                                                   *Counsel for Community Associates, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 21, 2026, the foregoing *Memorandum in Support of Opposition to Extend Deadlines* and this Certificate of Service, was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

Peter M. Mansfield, Esq,
Peter.Mansfield@usdoj.gov
caseview.ecf@usdoj.gov

vanessa.brown@usdoj.gov

/s/ Evan Park Howell III
Evan Park Howell III (18957)