**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **COMMUNITY ASSOCIATES, INC.** | * | **CASE NO. 25-1181** |
| **vs.** | * | **SECT. E(1)** |
| **KELLY LOEFFLER, ET AL.** | * | **JUDGE ST. JOHN** |
| | * | **MAG. JUDGE VAN MEERVELD** |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**MAY IT PLEASE THE COURT:** Plaintiff, Community Associates, Inc.'s (CAI), opposition to defendant, the U.S. Small Business Administration's (SBA), motion for summary judgment, Rec. Doc. 35-1: 1) improperly attempts to expand the administrative record (AR) on review in this Administrative Procedure Act (APA) case by inclusion of a testimonial declaration drafted for this litigation; 2) includes a lengthy factual background and statement of contested facts that lack citations to the AR; 3) advances a novel interpretation of 13 C.F.R. § 120.110(b) that lacks any basis in the text, history, and purpose of the regulation; and 4) ultimately fails to show any genuine disputes of material fact or law on the SBA's right to judgment. For these reasons, the Court should grant the SBA's motion for summary judgment. Rec. Doc. 31.

1. **The Court should strike CAI's Philburn affidavit.**

CAI's opposition attaches and cites the testimonial declaration of Nancy Philburn. Rec. Doc. 35-3. This declaration is outside the AR in this APA case and, for that reason, should be stricken.

In reviewing agency action under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The task of the reviewing court is to apply the

appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–744 (1985). The "focal point for judicial review" is the "administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Often called the "record rule," this principle limits the Court's review "to the record in existence at the time the agency made its decision." *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001); *see also Goonsuwan v. Ashcroft*, 252 F.3d 383, 391 n.15 (5th Cir. 2001) (citing the "bedrock principle of judicial review that a court reviewing an agency decision should not go outside of the administrative record").

Several sound policy justifications support the record rule. First, it binds the agency to the grounds it invoked when it took the challenged action, and prevents post hoc rationalizations for its decision. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020)). Second, the record rule "guard[s] against courts using new evidence to convert the arbitrary and capricious standard into effectively de novo review." *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1348 (Fed. Cir. 2021) (quotation marks and citation omitted); *see also Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005) ("The Supreme Court has consistently stated that review of administrative decisions is 'ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based,' and that 'no de novo proceeding may be held.' ") (quoting *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 714–15 (1963)). Finally, the record rule imposes a hard stop on the potentially never-ending "effort to get the last word." *OnPath Fed. Credit Union v. United States Dep't of Treasury,* No. 20-1367, 2021 WL 5769468, at *5 (E.D. La. Dec. 6, 2021), *aff'd,* 73 F.4th 291 (5th Cir. 2023).

"Courts permit supplementation of the administrative record only rarely," as "it is generally quite difficult to persuade a court to allow supplementation beyond the agency-certified record." 3 CHARLES H. KOCH, JR. AND RICHARD MURPHY, ADMIN. L. & PRAC. § 8:27 (3d ed.). In the Fifth Circuit, the party seeking to supplement the AR must "demonstrate[] 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1002 (D.C. Cir. 2008)).

Relying on authority from the D.C. Circuit, the Fifth Circuit in *Medina*, *supra* identified three situations where supplementation of the AR may be warranted, namely, when: (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review. *Id.*; *OnPath*, 73 F.4th at 299.

In this case, CAI doesn't identify what *Medina* factor allegedly justifies supplementation of the AR. *See generally* Rec. Doc. 35. That's unsurprising because they're all facially inapplicable to the Philburn affidavit. Accordingly, the Court should limit its judicial review to the AR that existed when the SBA made its challenged final agency decision, and not the record supplemented by a testimonial declaration created for use in this litigation. *See Harris v. United States*, 19 F.3d 1090, 1096 n.7 (5th Cir. 1994) ("[C]onsideration of the [extra-record] evidence to determine the correctness or wisdom of the agency's decision is not permitted.").

2. **The Court should disregard CAI's factual background and statement of contested material facts.**

CAI's opposition contains a lengthy factual recitation, Rec. Doc. 35-1 at pp. 3–5, and statement of contested material facts, Rec. Doc. 35-6, neither of which contain citations to the AR on review before the Court. Rule 56(c)(1)(A) unambiguously requires these specific citations. *See* FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]").[1]

In situations like this, where a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. FED. R. CIV. P. 56(e)(2)–(3). Either option yields the same result here: the SBA is entitled to summary judgment under the APA's deferential standard of review. *See* 5 U.S.C. § 706(2)(A).

3. **CAI's regulatory argument lacks any textual basis.**

CAI's principal opposition argument is that the SBA misapplied its CARES Act, Paycheck Protection Program (PPP) regulation, 13 C.F.R. § 120.110(b), that prohibits PPP loans to "[f]inancial businesses primarily engaged in the business of lending[.]" While the SBA determined that CAI met this definition because 55% of its income was from interest in the tax year immediately preceding the PPP loan, CAI claims that the SBA should have conducted a "functional and operational analysis" allegedly required under the regulation. Rec. Doc. 35 at p. 2. CAI claims that the SBA should have made a "meaningful analysis of CAI's actual business operations" to see if it "functioned as a bank, finance company, factoring business, or commercial

---

[1] CAI's failure to adhere to Rule 56(c)(1)(A) is surprising because the Court previously denied CAI's own cross motion for summary judgment for lack of compliance with this very rule. *See* Rec. Doc. 30.

lending institution[.]" Rec. Doc. 35-1 at p. 4. According to CAI, this would involve analysis of "CAI's business activities, employee functions, organizational purpose, or the role of seller-financed real-estate transactions within CAI's broader commercial operations." *Id*. at pp. 4–5.[2]

CAI's opposition fails to explain, however, where and how it derives these detailed commands from the actual text of § 120.110(b). Moreover, the text, history, purpose, and persuasive caselaw regarding the regulation belie CAI's creative interpretation. *See Kisor v. Wilkie*, 588 U.S. 558, 575 (2019).[3]

First, the text. When describing ineligible "financial businesses," the regulation includes illustrative examples "such as banks, finance companies, and factors[.]" CAI called itself a "finance company" involved in "mortgage loans" as its primary business activity on its tax return. SBA124 (sealed). Second, the term "primarily" is commonly understood to mean "for the most part." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/primarily (last visited June 1, 2026). Under that definition, a simple 50%-or-greater threshold for determining a primary source of income is hardly an arbitrary-or-capricious agency interpretation. *See generally In re Mohr*, 425 B.R. 457, 460–61 (Bankr. S.D. Ohio), *aff'd sub nom. U.S. Tr. v. Mohr*, 436 B.R. 504 (S.D. Ohio 2010) ("A debtor will be considered to have 'primarily' consumer

---

[2] CAI repeats this same core argument throughout its opposition materials. *See* Rec. Doc. 35-1 at pp. 8, n.1, 9–10, 16, 18–19, 23; Rec. Doc. 35-6 at p. 2.

[3] Contrary to CAI's suggestion, Rec. Doc. 35-1 at p. 6, the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) plays no role in the Court's current review. That case concerned whether judicial deference was owed to administrative agencies' interpretations of ambiguous statutes they administer. *Id*. Here, no party has alleged ambiguity in the statute. *See Tidewater Fin. Co. v. United States Small Bus. Admin.*, No. 23-609, 2024 WL 4329140, at *6 (E.D. Va. Aug. 9, 2024), *report and recommendation adopted,* 2025 WL 763940 (E.D. Va. Mar. 11, 2025) ("[T]he parties agree that *Loper* ultimately does not impact the court's resolution of this action.***I agree that the Act's unambiguous language does not prohibit the SBA from imposing Section 7(a)'s eligibility restrictions to the PPP loan program."). Nor does this case require *Auer*/*Seminole Rock* deference either. Rather, as explained in corresponding text, 13 C.F.R. § 120.110(b), is unambiguous under *Kisor*'s interpretive framework. *Kisor v. Wilkie*, 588 U.S. 558, 574 ("[A] court should not afford *Auer* deference unless the regulation is genuinely ambiguous.").

debts when more than one half of the dollar amount of debt owed is consumer in nature."). Third, the interest income CAI reported on its tax return, and the SBA relied upon, directly correlates to its primary lending activities. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 288 (Oxford 2d ed. 1995) ("*Interest . . .* = a charge one pays for getting a loan, usu. measured as a percentage of principal."). And CAI's opposition doesn't dispute this commonsense conclusion. Rec. Doc. 35-1 at p. 9 ("The record reflects that the interest income identified by the SBA arose from real-estate sales financed by CAI itself.").

Second, the history. The SBA adopted § 120.110(b) in 1996 as part of a reorganization of its regulations governing the 7(a) loan program. *See* Business Loan Programs, 61 Fed. Reg. 3226-01, 3239 (Jan. 31, 1996). The earliest version of the SBA's SOP 50-10(5) governing Lender and Development Company Loan Programs explained that the determination of whether a business was "primarily engaged in the business of lending" would depend on whether 50% or more of its revenue was from lending or non-lending activities. *See* U.S. SMALL BUSINESS ADMINISTRATION, OFFICE OF FINANCIAL ASSISTANCE, SOP 50-10(5) LENDER AND DEVELOPMENT COMPANY LOAN PROGRAMS 100–01 (Aug. 1, 2008), https://www.sba.gov/sites/default/files/files/serv_sops_50105_0_0_6.pdf. This interpretation has remained consistent from the genesis of the PPP loan program to present date. *See generally* https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs (historic versions of SOP 50 10).

Third, the purpose. The CARES Act directed the SBA to administer PPP loans under the agency's existing 7(a) loan program. 15 U.S.C. § 636(a)(36). "[I]t may be presumed that Congress was aware of the pre-existing rules and regulations of the Section 7(a) program –including Section 120.110—when it placed the PPP under Section 7(a)." *DACO Invs., LLC v. United States Small*

*Bus. Admin.*, No. 22-1444, 2024 WL 750594, at *9 (W.D. La. Feb. 22, 2024). The SBA's policy-based prohibition on loans to businesses primarily engaged in lending dates to the very origin of the agency and 7(a) loan program in 1953. *See* Small Business Administration Loan Policy Statement, 19 Fed. Reg. 5440, 5441 (Aug. 26, 1954) ("Financial assistance will not be granted by the Small Business Administration . . . [i]f the loan is to provide capital to an enterprise primarily engaged in the business of lending or investment."). In other words, the purpose of a 7(a) loan (and, by extension, a PPP loan) is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," not simply recycle borrowed money within the ecosystem of lenders in the financial industry. *See* 15 U.S.C. § 631(a).

Finally, the cases. There have been two prior APA-based challenges to the application of the § 120.110(b) eligibility rule to PPP borrowers. Both failed. *See DACO*, *supra*; *Tidewater Fin. Co. v. United States Small Bus. Admin.*, No. 23-609, 2024 WL 4329140 (E.D. Va. Aug. 9, 2024), *report and recommendation adopted,* 2025 WL 763940 (E.D. Va. Mar. 11, 2025). For the reasons explained above, CAI's present challenge—while less facial than *DACO* and *Tidewater*, *supra* and more as-applied—should fail too.

### 4. CAI's remaining arguments are meritless.

CAI's opposition includes two ancillary arguments that warrant only a brief reply.

First, CAI argues that "the SBA failed to account for the reliance interests" of borrowers during the COVID-19 emergency. Rec. Doc. 35-1 at pp. 11–15. But CAI is rather vague about: 1) what misleading statements from the SBA about borrower eligibility CAI relied upon; and 2) how the SBA changed its position post-reliance. The timeline explained in Sect. 3, *supra*, confirms that the SBA has always prohibited loans to borrowers primarily engaged in the business of lending, and carried over that eligibility criteria from 7(a) and into the first PPP rule. *See DACO*, 2024 WL

750594, at \*2–3 (outlining history of PPP rules). So the SBA never sent mixed eligibility signals to putative borrowers primarily engaged in the business of lending. *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020) ("When an agency changes course, as DHS did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.") (cleaned up).

Finally, CAI argues that it never received notice of the SBA Administrator's denial of its administrative appeal of the ineligibility determination. Rec. Doc. 35-1 at pp. 20–23. Assuming only for the sake of argument that there is a genuine dispute regarding whether CAI received this notice, that fact is immaterial for summary-judgment purposes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

CAI doesn't dispute that it received timely notice of the SBA Office of Hearings and Appeals' denial of CAI's initial appeal. SBA82–85.[4] CAI didn't seek reconsideration of this decision under 13 C.F.R. § 134.1211(c), but instead sought review from the SBA Administrator under § 134.1211(d). That provision, however, vests discretionary review exclusively with the Administrator and creates no appellate rights for aggrieved borrowers like CAI. *Id.*; *see also* SBA87. And even if CAI had appellate rights to the Administrator, the Administrator's letter sustained the initial decision adverse to CAI. SBA96. Assuming only for the sake of argument that CAI didn't receive this letter, CAI still hasn't articulated how the present civil action before the Court would be differently postured in any material way had it timely received the correspondence. In other words, receipt or no receipt, CAI would still be aggrieved by final agency action

---

[4] The unsealed portions of the AR are filed at Rec. Docs. 20 and 27-1. For ease of reference, the SBA will cite the bates numbers stamped on the bottom-right of Rec. Docs. 20 and 27-1 in this memorandum.

reviewable under the APA standards of review. *See* 13 C.F.R. § 134.1211(g) ("Final decisions may be appealed to the appropriate Federal district court only."); SBA96.

### 5. Conclusion

The SBA's longstanding loan-eligibility rule excluding businesses primarily engaged in lending is clear and unambiguous. The SBA properly applied the plain language of the rule to the uncontested figures contained in CAI's tax return. CAI has failed to identify any evidence suggesting arbitrary-or-capricious agency action. For these reasons, the Court should grant the SBA's motion for summary judgment and dismiss this matter with prejudice. Rec. Doc. 31.

Respectfully submitted,

DAVID I. COURCELLE
UNITED STATES ATTORNEY

*s/Peter M. Mansfield*
PETER M. MANSFIELD (#28671)
Chief, Civil Division
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone: (504) 680-3047
Facsimile: (504) 680-3184
Peter.Mansfield@usdoj.gov