UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COMMUNITY ASSOCIATES, INC., | CIVIL ACTION |
| VERSUS | NO. 25-1181 |
| KELLY LOEFFLER, ET AL. | SECTION N |

**ORDER AND REASONS**

Before the Court is the motion for summary judgment filed by Defendant Kelly Loeffler, in her official capacity as Administrator of the Small Business Administration.[1] Plaintiff Community Associates, Inc. opposed the motion,[2] and Defendant filed a reply in support.[3] Having carefully considered the parties' memoranda, the record, and applicable law, the Court grants the motion.

## I. Background

In March 2020 Congress passed and President Trump signed into law the Coronavirus Aid, Relief, and Economic Securities (CARES) Act to provide economic support for the American people during the COVID-19 pandemic. The CARES Act established the Paycheck Protection Program, which provided federally guaranteed, forgivable loans to help small businesses continue paying their employees.[4] This case arises from one such loan issued to Community Associates, for which the SBA subsequently found the company ineligible because it was primarily engaged in the business of lending.

---

[1] Rec. Doc. 31.
[2] Rec. Doc. 35.
[3] Rec. Doc. 36.
[4] 15 U.S.C. § 636(a)(36).

Community Associates filed a complaint for declaratory and injunctive relief, alleging unlawful agency action and seeking to have its loan declared forgiven and collection efforts ceased. Defendant asserts that she is entitled to summary judgment because SBA's ineligibility determination and pursuit of reimbursement were not arbitrary, capricious, or contrary to law. Community Associates opposes Defendant's motion, contending that the SBA failed to perform the proper analysis, consider reliance interests, engage in reasoned decisionmaking, or provide meaningful notice of the SBA Administrator's final action.

The following facts are undisputed unless otherwise noted.[5]

By application dated April 15, 2020, Community Associates applied for a loan from Hancock Whitney Bank through the Paycheck Protection Program.[6] Community Associates certified in the application that it was "eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the [SBA] implementing the Paycheck Protection Program under Division A, Title I of the [CARES Act] (the Paycheck Protection Program Rule)."[7] At the time of the application, 13 C.F.R. § 120.110(b) (effective September 20, 2017 to July 31, 2022) provided that "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" were ineligible for SBA loans. Hancock Whitney Bank reviewed the loan package and also stated in its lender

[5] Community Associates did not file a response to Defendant's Statement of Uncontested Material Facts, and its own Statement of Contested Facts largely contained legal conclusions. *See* Rec. Doc. 35-6.
[6] Rec. Doc. 20 (Administrative Record) at SBA000006.
[7] *Id.*

application that Community Associates was not ineligible under 13 C.F.R. § 120.110.[8] Community Associates received a loan for $27,775 in May 2020.[9] Under the payment terms, Community Associates would pay principal and interest payments of $1563.08 every month, beginning in seven months.[10]

Hancock Whitney assigned to the SBA all right, title, and interest in the Community Associates loan and authorized the SBA "to ask, demand, receive, collect, sue and take all lawful actions for recovery" of the loan funds.[11]

In January 2022 Community Associates submitted an application for full forgiveness of the loan.[12] The application stated that "SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness," and "SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan."[13] Community Associates represented that it had "complied with all requirements of the Paycheck Protection Program Rules."[14] In connection with its review of the loan forgiveness application, the SBA requested documentation from Hancock Whitney, including tax records and other financial documents from Community Associates.[15]

By letter dated October 31, 2022, the SBA informed Hancock Whitney that

---

[8] *Id.* at SBA000002, SBA000004
[9] *Id.* at SBA000027.
[10] *Id.* at SBA000028.
[11] *Id.* at SBA000187.
[12] *Id.* at SBA000055.
[13] *Id.*
[14] *Id.*
[15] *Id.* at SBA000058-59, SBA000062-69.

SBA had determined that Community Associates was ineligible for the PPP loan and that no loan forgiveness was appropriate.[16] SBA had concluded from its review of documentation that Community Associates was a financial business primarily engaged in lending an ineligible business engaged in financing or factoring.[17] SBA explained that Community Associates is "primarily involved in the sale and financing of real estate," as it had "recognized the majority of its income in 2019 from interest charged (55%) on real estate sales that they had financed."[18] Community Associates's 2019 federal tax return stated a "total income" of $531,652, with mortgage and loan interest of $294,348.[19] The letter stated that Community Associates had a right to appeal the decision and set forth the rules for any such appeal, including the 30-day filing deadline.[20]

Community Associates filed an appeal of the SBA's ineligibility determination to an Administrative Law Judge in the SBA Office of Hearings and Appeals, but the Administrative Law Judge dismissed the appeal as untimely.[21] The dismissal order, issued February 9, 2023, stated that it was an initial decision that would become the SBA's final decision 30 days after service "unless a reconsideration request is filed pursuant to 13 CFR § 134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR § 134.1211(d)."[22] Community Associates filed a request for further discretionary review from the SBA Administrator within 30

---

[16] *Id.* at SBA000070-71.
[17] *Id.* at SBA000070.
[18] *Id.*
[19] *Id.* at SBA000123, SBA000145.
[20] *Id.* at SBA000071.
[21] *Id.* at SBA000082-85.
[22] *Id.* at SBA000084.

days.[23] The Administrator declined that request.[24]

Community Associates filed the present action against the SBA Administrator in her official capacity and the Secretary of the Treasury in his official capacity, alleging claims for unlawful agency action under the Administrative Procedure Act, violation of its due process rights, and ultra vires agency action.[25] Section E of this Court, prior to transfer of the case to the present section, granted the unopposed motion to dismiss the Secretary of the Treasury for lack of subject matter jurisdiction.[26] Accordingly, only the claims against the SBA Administrator remain. The Administrator now seeks summary judgment under Federal Rule of Civil Procedure 56.

## II. Legal Standards

### A. Administrative Procedure Act

Under the Administrative Procedure Act, a reviewing court is to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."[27] The court is empowered to "hold unlawful and set aside agency action, findings, and conclusions found to be" arbitrary, capricious, an abuse of discretion, contrary to law, in excess of statutory authority or limitations, or without observance of procedure required by law.[28] Courts are to "exercise their independent judgment in

---

[23] *Id.* at SBA000094.
[24] *Id.* at SBA000096.
[25] *See generally* Rec. Doc. 1.
[26] Rec. Doc. 11.
[27] 5 U.S.C. § 706.
[28] *Id.*

deciding whether an agency has acted within its statutory authority."[29] So long as the agency stays within its statutory authority, the court's role is not to weigh the evidence for a decision "pro and con," but to determine "whether the agency has examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[30] So long as "the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld," even if a court believes the result is less than ideal.[31] However, if an agency relied on improper factors, entirely failed to consider an important aspect of the problem, or offered explanations contrary to the evidence before the agency, the decision was arbitrary and capricious.[32] In undertaking its review, a court is to consider "the agency decision based on the record the agency presents to the reviewing court."[33] Here, Defendant filed the administrative record without objection.[34]

### B. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] "An issue is material if its resolution could affect the outcome of the

---

[29] *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024).
[30] *Chamber of Commerce of the U.S. v. U.S. Secs. & Exch. Comm'n*, 85 F.4th 760, 768 (5th Cir. 2023) (citation modified); *see also Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988) (court's role is to determine whether agency decision was based on "consideration of the relevant factors"); *see also Texas v. U.S. Env't Prot. Agency*, 170 F.4th 328, 356 (5th Cir. 2026) (examining whether agency reasonably considered the relevant issues and reasonably explained its decision).
[31] *Tex. Oil & Gas Ass'n v. U.S. Env't Prot. Agency*, 161 F.3d 923, 934 (5th Cir. 1998); *see also Verity*, 853 F.2d at 327.
[32] *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).
[33] *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).
[34] Rec. Docs. 20, 20-1, 20-2.
[35] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

action."[36] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[37] All reasonable inferences are drawn in favor of the nonmoving party.[38] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[39]

## III. Analysis

The parties' dispute boils down to whether the SBA properly determined that Community Associates was ineligible for a PPP loan because it was a "financial business primarily engaged in the business of lending." Community Associates argues that the SBA's eligibility determination was arbitrary, capricious, and ultra vires because the SBA should have undertaken a "meaningful analysis" of its actual business operations to determine if it functioned as a bank, finance company, or commercial lending institution as allegedly required by 13 C.F.R. § 120.110(b); improperly disregarded reliance interests created by the government's approval process; and provided deficient notice of its final action.[40] Community Associates argues that the § 120.110(b) exclusion does not apply to "every business that finances transactions incidental to its operations" or that receive interest income; rather, the

---

[36] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citation modified).
[37] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[38] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[39] *Smith v. AmedisysInc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[40] Rec. Doc. 35-1 at 2.

regulation targets "'financial businesses' whose primary business activity is lending itself."[41] Community Associates contends that SBA's interpretation effectively rewrites the regulation by collapsing an operational inquiry into a simplistic accounting formula based upon a single category of revenue.

As set forth in the SBA's final loan review decision letter, the SBA concluded that Community Associates was not entitled to loan forgiveness because it was ineligible for a PPP loan in the first place.[42] The SBA explained that "[a]fter extensive review of the documents and information provided," it had determined that Community Associates recognized the majority (55%) of its 2019 income from interest charged on real estate sales that it had financed.[43] The record reflects, and Community Associates does not dispute this fact.[44] In that same 2019 tax return, Community Associates stated its business activity as "finance company" and its product or service as "mortgage loans."[45] It also identified its business activity code as 522292, which is the industry code for "Real Estate Credit," "compris[ing] establishments primarily engaged in lending funds with real estate as collateral."[46] "Finance companies" are expressly identified as an example of the financial businesses ineligible for PPP loans under 13 C.F.R. § 120.110(b).

Community Associates does not cite any precedent requiring SBA to undertake

---

[41] *Id.* at 8.
[42] Rec. Doc. 20 at SBA000070.
[43] *Id.*
[44] *See* Rec. Doc. 35-1 at 9 ("The record reflects that the interest income identified by the SBA arose from real-estate sales financed by [Community Associates] itself.").
[45] Rec. Doc. 20-1 at SBA000124.
[46] *Id.* at SBA000123; NAICS Association, NAICS Code Description, *available at* https://www.naics.com/naics-code-description/?code=522292.

the detailed "operational analysis"—including analysis of the company's business activities, employee functions, organizational purpose, and the role of seller-financed real estate within its broader operations—that it claims was required. Nor does the regulatory text or history support any such requirement. The text expressly includes "finance companies" as an ineligible "financial business[] primarily engaged in the business of lending," and that's the term Community Associates used to describe itself in its 2019 tax return. The definition of "primarily" is "for the most part,"[47] and the regulatory history supports this interpretation. Section 120.110(b) dates back to 1996, when the SBA reorganized its regulations governing its 7(a) loan program. For decades, the SBA has held the position that whether a business was "primarily engaged in the business of lending" depends on whether greater than half of its revenue was from financing activities or from other business activities, such as the sale of merchandise or the service of cashing checks.[48] Community Associates does not dispute that in 2019 greater than half of its revenue was interest from real estate sales that it financed or that real-estate financing qualifies as "lending."

Moreover, while Community Associates asserts that the SBA did not adequately consider "important aspects of the problem," it does not point to anything in the record that undermines the SBA's determination that Community Associates functioned as a financial business primarily engaged in the business of lending—such as, for example, evidence showing that a majority of its business involved some other

---

[47] *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/primarily.

[48] *See, e.g.*, U.S. Small Business Administration, Office of Financial Assistance, SOP 50-10(5), Lender and Development Company Loan Programs at 100-101 (effective Aug. 1, 2008).

activity. Community Associates claims that it's possible for seller financing associated with real-estate transactions not to be synonymous with operating a lending business because commercial enterprises may recognize "interest income ancillary to their principal operations." Even so, it provides no evidence in the record before the SBA that would support such a finding.[49] Rather than its review being cursory or its decision unsupported, the SBA made multiple information requests for numerous financial records, and stated in its final decision letter that it had reviewed and considered these materials.[50]

Community Associates further contends that the SBA failed to consider reliance interests in its decision. While an agency must be cognizant that a change to longstanding policies may upset "serious reliance interests,"[51] the SBA did not change any longstanding policy here and, in any event, provided a reasoned explanation for its decision. Any reliance interests were created not by SBA policies but by Community Associates's certification that it was eligible for a loan when it was not. The program was structured to prioritize speed and efficiency and relied upon the loan applicants' certifications about themselves. The SBA's ineligibility determination did not "reverse course" and upset settled expectations. Rather, the governing regulation expressly stated that financial businesses primarily engaged in the business of lending were ineligible to receive loans. The SBA applied that regulation to the record before it, and explained its record-based reasons for its final

[49] Rec. Doc. 35-1 at 16-17.
[50] Rec. Doc. 20 at SBA000062-73.
[51] *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016).

decision.

Finally, Community Associates challenges the SBA's action on the grounds that it did not receive a copy of the SBA Administrator's letter declining its request for discretionary review.[52] The office manager of Community Associates filed a declaration in support of this argument and the motion more broadly. Any failure of the SBA to serve Community Associates with the SBA Administrator's letter declining discretionary review, however, is not relevant to the summary-judgment decision.[53] The review by the SBA Administrator was purely discretionary and created no appellate rights for borrowers such as Community Associates. As a result of the Administrator's declining review, the SBA's decision adverse to Community Associates remained in effect.[54] Community Associates would not be in a different posture if they had immediately received the Administrator's letter. Community Associates would still be aggrieved by the final agency action and the decision would be subject to the same review in this Court.

On this record, the SBA has demonstrated that it "examine[d] the relevant data," and the Court finds that it "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[55] Accordingly, Community Associates's claims that the SBA engaged in unlawful or

---

[52] Rec. Doc. 35 (citing SBA000096, the letter stating the SBA Administrator declines to exercise her discretion to review the decision issued in Community Associates's appeal).

[53] Defendant seeks to have the Court strike or disregard Community Associates's declaration because it was not part of the administrative record before the SBA. Community Associates does not seek to have the declaration considered as part of the administrative record but rather as evidence of its lack of notice.

[54] *See* Rec. Doc. 20 at SBA000084.

[55] *Chamber of Commerce of the U.S.*, 85 F.4th at 768.

ultra vires agency action or violated its due process rights fail as a matter of law.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment[56] is **GRANTED.**

New Orleans, Louisiana, this 21st day of October, 2026.

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

[56] Rec. Doc. 31.